of Brightman v. InMode. Good morning, Your Honor. May it please the Court, Joshua Reitzis from Berlandi Nussbaum & Reitzis on behalf of the appellant, Dr. Lori Brightman. Your Honors, while we rely on our briefs and the court record, we deem it necessary to clarify Dr. Brightman's position at this time. I'm going to highlight three points and then I'm really deem it necessary to clarify one in particular. The first and foremost is that Dr. Brightman concedes that the forum selection clause contained in the 2010 stock option agreement does apply to the April 5th, 2009 agreement granting the 7,000 shares. And that's enumerated in the 2010 notice of stock option award. The second point for clarification is that the forum selection clause contained in section 12 of the stock option award agreement does not apply to the October 2009 RFAL agreement and the October 13th, 2011 Fractori agreement. For reference, I'm going to be referring to the 2009 RFAL agreement as the second agreement and the October 13th, 2011 Fractori agreement as the third agreement in this argument. Both of these agreements are referenced in the first amended complaint, which is Doc 21 in the court record. And the third point of clarification is that the court does have discretion to determine whether the forum selection clause applies to the second and third agreement. While we agree with our adversary on the law that new arguments may not be raised on appeal, this is really not the case here. It's important to note that the trial court did not address whether the forum selection clause applied to the second and third agreements, which was contained in our opposition brief. Can I ask you a question about that? Yes, Your Honor. Both parties in discussing this question of whether the forum selection clause applies to the oral agreements seem to have relied on New York law. Can I take that as a as an agreement from the parties that at least for purposes of this case, New York law is the proper frame of reference for evaluating Yes, Your Honor. For me, yes. Thank you. Dr. Brightman is a very sophisticated medical professional. And while she is highly educated and respected in her field, she's not an attorney, nor does she specialize in transactions. In determining whether or not she knew what she was signing with the option agreement or notice of stock option award, she did not possess the requisite sophistication. The court should not permit penalty of sorts for her agreeing to sign a document that was certainly unsuitable and meant to only be a placeholder as it was relayed by the company CEO. At the very least, the option agreement and notice of stock option award are all encompassing of the, I'm sorry, let me rephrase, at the very least that option agreement and the notice of stock option award is simply not all encompassing for all the agreements with respect to the second and third agreement. The first amended complaint makes it clear that the defendant knowingly took advantage of this situation. With respect to the first point, Dr. Brightman concedes that the foreign selection clause applies to the 7,000 shares, but it does not apply to all the agreements between her and Inmode. The foreign selection clause applies to award number 201-00412. This is the number located on page two of the 2010 notice of stock option award, which expressly states 7,000 shares. This is document 24 in the court record, exhibit A or number one. This exact same award number is listed on the top right corner of the stock option award agreement on page one, and this is doc 24 of the court record, exhibit B or number two. And on page two of the 2010 notice of stock option award, it is expressly, it expressly states that nothing on this notice, the option agreement or the plan, shall confer upon grantee any rights with respect to future awards. And on page three, section 11 of the stock option award agreement, the entire agreement provision, the boilerplate provision, expressly states that the document along with the 2010 notice of stock option award limits the subject matter only to the subject matter hereof. Can I ask another question about the scope of your concession? When you say that you concede that the foreign selection clause applies to the 7,000 shares, there's that delta between the orally promised shares and then the shares that are actually reflected in the written agreement implementing that. Yes, Your Honor. Are you conceding that the issue of whether there's a claim for those residual shares is subject to adjudication or arbitration in Israel? That's part of the foreign selection clause? Yes, Your Honor. It's only the distinct oral promises, one before and one after the 2010 written agreement? There was an agreement. It was codified in the 2010 agreements. I'm going to call the stock option award as well as the stock option award agreement as the 2010 agreements. Okay, fair enough. Thank you. Yeah. On page three of the section 11 also states that the notice, this is with respect to the 2010 notice of the stock option award, that the notice and stock option agreement may not be modified adversely to the grantee's interest except by means of a writing signed by the company and the grantee. However, this is exactly what is happening to Dr. Brightman. The defendant is advocating for the foreign selection clause to be applied universally, yet there is no evidence of a separate writing as is mandated by the stock option award agreement. If the foreign selection clause applies to agreements two and three, it is unquestionable that it will adversely affect the grantee's rights. In this case, Dr., I'm sorry, the defendant did not provide a separate writing that would make those other grants under the same terms and conditions as the award number 201-0042. With respect to the second point, the foreign selection clause contained in section 12 of the stock option award agreement does not apply to the second and third agreements. As I mentioned earlier, the notice of award and the option agreement on their own terms state that it doesn't apply to the second and third agreements. As the court record reflects, Inmode's former president, Brian Lodwig, provided a declaration which is part of the First Amendment complaint. From both the allegations contained in the First Amendment complaint along with the declaration of Mr. Lodwig, it is the fact to be determined, it is a fact to be determined that true that two agreements for additional compensation were agreed upon and not governed by the notice of stock option award or the stock option agreement. The second and third agreements do not have corresponding stock option awards or notice of option award agreement from Inmode like the April, like the first agreement, the April 9, 2009 option for the 7,500 shares. Inmode even acknowledges this fact. Therefore, Inmode should not be able to rely on the foreign selection clause and choice of law provisions if they fail to deliver the corresponding awards of stock option and notice of stock option award agreement. If we accept your argument, start looking at these oral agreements separately, um, send it back. Could the district court very reasonably conclude applying sort of conventional forum select, uh, convenient forum principles that given that one of your claims is sort of mandatory subject to the foreign selection clause, that as a matter of convenience, it makes sense to keep them all together and send them all to the other forum? Well, Your Honor, I think it would be a question of if it was, no, the answer to that is no. I don't think the district court would find it as an issue of convenience because it would then be remanded to determine whether the second and third agreements should be, you know, litigated here in the States. It doesn't necessarily mean that the plaintiff will go forward in Israel. It's not as if they're, she's seeking complete adjudication in terms of all the issues that would be applied to the district court. If she were to go forward, maybe that would apply, but I don't, I don't believe that would be the case. And I think my adversary even advocated that one party is certainly going to be inconvenienced no matter what. It's almost as if there would be two separate causes, two separate claims, two separate actions. One would be in Israel about the delta of the 7,500 shares or 7,000 and the other would be an issue of the second and third agreements. But they do arise from the same course of conduct, even if they're distinct. That's why I was just trying to figure out as a practical matter, what would happen if we followed your path here, but. They do, but they. You're not taking a position now as to whether the plaintiff would go forward on the claims in Israel. Correct. I'm not taking that position. I am saying though that there are a lot of different circumstances that exist with respect to the second and third agreement as they were a separate agreement in arrangement with the president of the company versus what he was originally hired to do with respect to the 2009 agreement. And they are somewhat independent of each other. I do want to be certain that I understand it. Are you saying that the subsequent agreements can be considered without any consideration of the written agreement that incorporates the forum selection clause? I thought that your adversary takes the view that that there would have to be reference back to the original agreement. The original agreement being the 2010? The one that has the forum selection clause. We disagree. We disagree because the CEO of the company had said, you know, look, sign this document as a placeholder. That was never the intended purpose. No, no, but now if you're suing under the subsequent agreement, can that be done without looking at the earlier agreement? Yes, because it all emanates from the 2008 stock option plan. May I also ask, and this may be at the risk of repetition, there is the argument that you waive this argument by not raising it in the district court. Where would I look to see that you did raise it in the district court? In the opposition brief of the motion to dismiss. We raised the argument that the forum selection clause doesn't apply to all the agreements, and based on a linear thought here, it wouldn't apply to the second and third, and we're conceding that it does on the first. All right, we'll hear from your adversary as to whether he disputes that, but okay. Thank you. Sure. Reserve some rebuttal time. Okay. Thank you, Your Honor. Good morning, Your Honors. May it please the court, Brian Cousett, KNL Gates, LLP, on behalf of defendant Appley Inmode. Counsel's clarifications on the record certainly simplify some of the issues for the court today in the sense that the arguments about consideration and fraud that were pled and argued below and constituted the entirety of the district court's decision apparently are no longer at issue now that they're conceding that the forum selection clause is enforceable, at least as to the 7,000 shares specifically identified in the 2010 notice, which appears at page 89 of the joint appendix. I'll start with the procedural argument that you'll look at... We've heard counsel say that he thinks he raised it in the opposition. What's your position on that? We would disagree with that, Your Honor. If you'll look at page 70 of the joint appendix, our brief in support of our motion to dismiss below, we specifically argued under a separate header that the forum selection clause covers the parties and all claims pled in the first amended complaint. And in opposition, pages 128 to 131 of the joint appendix, the plaintiff, Dr. Brightman, appellant Dr. Brightman, acknowledged that we had argued that. It's on page 129 of the joint appendix in their brief. They specifically acknowledged that we had argued that all of the claims in the case were covered by the forum selection clause in the in as part of summarizing our arguments below and presenting the district court with the Martinez factors for enforcing a forum selection clause. And then Dr. Brightman in her opposition brief below went right on to discussing the fourth factor of the Martinez test, whether or not the presumption of enforceability was rebutted for fraud or lack of consideration or something like that. So are you referring to the sentence at page 129 where Dr. Brightman says here in mode argues among other things that the forum selection clause covers all claims and disputes at issue? Is that what you're referring to? Yes, that is. Now you're saying they don't challenge that. Yes, that is your honor. That's your argument. Okay, that's correct, your honor. And in the rest of that section, the argument that Dr. Brightman made below is focused on that fourth Martinez factor. There's no argument about the third factor, which is whether or not the forum selection clause covers all the claims in the dispute. And that's exactly why the district court held correctly that the parties didn't dispute the presumption of enforceability below and focused its decision that's on appeal here today on that fourth factor of the Martinez test. All right, if we're not persuaded by your argument, then you have another one, right? Well, I do, but I would just like to say, you know, in the reply brief, Dr. Brightman argued that, you know, this is a pure issue of law. And I think, Judge, your question may have been geared at least in part to that because about the choice of law, because the forum selection clause has an Israeli choice of provision. And what we had noted below was that we were briefing the issues under New York law because we had no reason to believe there was any differences. But under Martinez, you know, that can be governed by Israeli law to the extent there's a dispute. In your brief on appeal, you've actually specifically invoked New York law in connection with this question of the scope of the forum selection clause and whether it reaches these. And I just, I'm taking that as an agreement that New York, Well, I think that's true, Your Honor. Yes. What I was simply saying is to go back to the procedural point that we were talking about a moment ago, to the extent this was disputed below, whether under New York law, under Israeli law, or on the facts, and there are some factual issues that I'll get to in a moment, that should have been raised below and allowed the district court to determine whatever facts or law needed to be determined to determine whether or not this forum selection clause meant the presumption of enforceability under Martinez and whether that presumption should be rebutted on the basis of fraud or something else. None of that happened below because it wasn't raised and contested in the district court. On the substance, Right, but just to close the loop on that, so wasn't raised below, was raised on appeal, responsive brief, makes the waiver argument, but also addresses the merits. Correct. And addressing the merits implies New York law. I didn't see any argument that Israeli law is applicable and I didn't see you briefing Israeli law to us. Am I right in saying that you're agreeing that we should, if we got to the merits, we should look through the lens of New York law? Yes, that's how we brief this issue. The answer is yes to your question. I'm simply noting that procedure. I will also say it is not just a pure issue of law, even if the court were to apply New York law. As Mr. Rice has said a moment ago, there are three alleged agreements. One was signed in, the signed agreement is April of 2010, but one of the oral agreements that they're alleging here is not covered by the forum selection clause. Mr. Rice is identified as being entered into in 2009 and this 2010 agreement that Dr. Brightman signed contains on page 93 of the joint appendix a merger clause. So it predated the merger clause and you would say the merger clause applies? Correct, Your Honor. At minimum, that's a factual issue that the district court didn't get a chance to address because this issue wasn't raised below. If you give me one moment, I'll just make sure I have nothing further. The only other thing I think I would say here is, oh, I'm sorry. The second agreement, this oral agreement, postdated the written agreement, correct? Maybe you wanted to address that. That is the argument that they make, yes. So two points on that. First, as part of the 2010 agreement that Dr. Brightman signed, the merger, it incorporates by reference in Mode's stock option plan on page, I believe it's page 91 of the joint appendix. And then the merger clause itself defines the entire agreement as including that option plan. The forum selection clause says that disputes arising out of or relating to the notice, the 2010 agreement, or the option plan have to be decided in Israel. I'm mindful of that argument and what I was trying to figure out is, is this an argument arising from the option plan or is it arising from a failure to actually issue options pursuant to it? In other words, if this was a dispute about the manner in which the options were issued or something about the sort of 2011 analog to the 2010 agreement, right? The written document implementing the issuance of the options that had been promised in 2009, right? But if I understand the claim, it's you said you would issue options to me, but you didn't. So we never actually get to the option plan because the options were never issued. How do we say that that at all? Oh, I guess you're asking, it's kind of a chicken or egg kind of a situation. Is that the nature of your question, your honor? I hadn't thought of it in terms of foul. Well, I think again, I mean, this is something that was not contested below, but what is in the record is that the option plan governed all stock options for in mode from 2008 until 2017. So that is in the record. I can give you the exact site, but it's our client's declaration attaching the option plan. Again, that was not contested below. So to the extent there is an option to be granted, it had to be governed by the option plan based on the record on appeal. But if the allegation is you promised that you would issue options and you didn't, then the claim now would be for damages, right? I don't think it's a claim for specific performance. So the issue options pursuant to that plan, it's a claim for giving the money that I would have gotten had you properly issued them or I'm misunderstanding the claim. Well, I do believe actually, I'm pulling out the record just to confirm your honor, but I do believe that the claim that was made is for specific performance. Yes, it's page 44 of the joint appendix, the fifth cause of action is for declaratory or even specific performance. So I do think it does fall within that. And the other thing I would just say, I see my time is almost up, is very quickly that based on what Mr. Reutses has just indicated, at least a significant portion of this dispute is going to Israel now that they've conceded that the form selection clause is enforceable and abandon the fraud and consideration arguments. So to the extent that there's bifurcated proceedings, that doesn't make much sense, especially given here where the only argument they're now presenting to the court is one that was weighed below. Are there any further questions? Otherwise, it rests on our papers. Thank you. I felt that too. Yeah, I mean, your arguments were shaking. I'll be brief, your honor. Thank you, your honor. We will concede that the degrees were not as artful as they should be. With respect to the postdated argument, the agreements actually required a performance. So the fact that an agreement was made in 2009 and then 2010, there was an agreement in writing for the 2010 notice of award, and then the corresponding agreement makes sense because it was earned. In the 2009, the October agreement, and then in 2011, both of those required performance over a period of time with clinical studies, such as going to a doctor's office and seeing whether this stuff actually worked. Also, they would not even come into fruition until the company went public, which was made in the declaration of Brian Ludwig, as well as in the First Amendment complaint. With respect to the failure to issue the option agreement, your honor, we agree with you. We think that this is more about their failure to do that. And finally, I would like to just add that- How is that not- I mean, to the extent you have any entitlement to the options, you're relying on what? An oral agreement that is governed under New York law, that allows you to make- that does not need a writing under the statute of frauds, that this was entered into after this other agreement applied. So there were three, as my adversary concedes, there were three agreements and that they should be treated as such. All right, but now the Forum Selection Clause does say that it applies to any action or proceeding arising out of or relating to the notice, the plan, or the option agreement. Now, are you saying that you have an option agreement different from the one that's being referred to in that Forum Selection Clause provision? I'm saying that- The answer is yes. I'm saying that if you read the 2010 notice of award and the notice of stock option agreement, you will see on the top corners and in the body of the document a reference to a number and a specific reference to the number of shares. And in the provisions themselves, it specifically says it's only related to the subject matter hereof. So if you take away those agreements and you're left with the 2008 stock option plan, which is what this all emanates from, we would say the second and third agreement apply only or are governed by that 2008 plan, not the 2010 plan to which specifically references those specific 7,000 shares. So when the plan itself says that it governs the award of stock options as part of the part of the company's program to stimulate active interest in development of financial success by providing opportunities to purchase shares in the company, that's not what you're alluding to in the post-2007 claims that you're raising. Correct. That is correct. Okay. Now, your adversary pointed us to pages in the appendix, I think A129, that he says shows that you didn't raise this question of the stock option, I'm sorry, the form selection clause applying to post-2007 agreements. Where would we look for where you did raise it? Your Honor, I don't have the appropriate document in front of me. I would just need a minute to do that. What I recall from- I mean, I'm just surprised, counsel, because you know the waiver was briefed. I mean, and so to the extent you're arguing that you did raise it, I would expect you'd be able to show us where you did. I agree with you. We raised it in that opposition paper. I just don't- But I mean, you're saying go look for it. Your Honor, I'm happy to- Okay. Thank you. Thank you, Your Honor. Thank you both, and we will take the matter under advisement.